PRESTON STATE BANK, Appellant,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY et al., Appellees.

No. 15444.

Court of Civil Appeals of Texas.

Dallas.

Oct. 10, 1958.

Rehearing Denied Dec. 19, 1958.

C. E. Kennemer, Jr., and James P. Donovan, Dallas, for appellant.

Strasburger, Price, Kelton, Miller & Martin; Royal H. Brin, Jr., and Thompson, Coe & Cousins, Dallas, for appellees.

YOUNG, Justice.

The suit of appellant Bank was initially against National Union Fire Insurance Company alone for the sum of $1,789 in connection with a premium finance contract incident to a policy of National Union insuring the property of one Bailey C. Johnson; alleging that Johnson had defaulted in payment of premium installments, and that the Bank, in compliance with the contract, had requested cancellation of policy, thereby becoming entitled to the unearned premium in above amount. Defendant insurance company impleaded its agent George E. Chamberlain, alleging payment of the Johnson unearned premium to him and praying for judgment over against said third party; the latter in cross-action against the Bank, while in effect admitting liability for the $1,789, prayed for judgment against it for certain overpayments made by him on his other obligations. On trial to a jury and verdict, a judgment was rendered in favor of Chamberlain for the sum of $2,888.02, which is the subject of this appeal.

Appellant's principal defense to said cross-action was the two-year statute of limitation, plead both by exceptions and to the merits. The following summary of jury issues and answers reflects the material facts relied on by cross-plaintiff in support of his cause of action: (1) That prior to September 1953, Preston State Bank *did not* notify Chamberlain (cross-plaintiff) that the Cherry Deferred Premium Contract was delinquent and request Chamberlain to cancel the policies and return the unearned premium thereon; (2) that in September 1953 Chamberlain made certain payments to Preston State Bank totalling the sum of $4,677.02; (3) that at time of such payments it was not the intention of Chamberlain that same be applied to the indebtedness of one J. C. Cherry under his deferred payment contract, then owned by the Bank; (4) that at time Chamberlain made the payments to Preston State Bank in September 1953, he intended that such payments were to be applied to his own obligations, other than the Cherry contract; (5) the Preston State Bank failed to give Chamberlain credit on his obligations to it; (6) Chamberlain received knowledge on May 3, 1956 that the Bank had failed to give him credit for the September 1953 payments on his obligations to the Bank, other than the J. C. Cherry Deferred payment contract; (7) that following the payments made by Chamberlain to the Bank in September 1953, said Bank misinformed him as to the balance due on his obligations to the Bank; (8) that the actions and conduct on part of Preston State Bank in misinforming Chamberlain as to the balance due on his indebtedness caused him to overpay his said indebtedness; (9) amount of the overpayment was $2,888.02; (10) and reasonable attorney's fee for services rendered in this case by attorneys for the Bank was $500.[1]

1. The deferred payment method of financing of insurance premiums was simply this:

Evidenced by a contract between the insurance agent and assured, and assign-

Chamberlain's cross-action in material part had alleged: "Further answering, if need there be and by way of set-off, recoupment, reconvention, cross-claim and cross-action against Preston State Bank would show the Court that in September of 1953 he was indebted to Preston State Bank upon certain obligations and made payments to said Bank by checks in the respective amounts of $900, $2900 and $877.-02. Much later he learned that the said Bank claimed and purported to have applied said payments not to any of the obligations upon which George E. Chamberlain was indebted to the Bank but upon a note of one J. C. Cherry upon which George E. Chamberlain was not obligated or liable in any amount whatsoever at the time of said payments. Said Bank, unknown to George E. Chamberlain had not given him credit upon his indebtedness for such payments but had continually misinformed him as to the balance of his indebtedness and caused him to overpay said indebtedness. Therefore the said George E. Chamberlain and National Union Fire Insurance Company are entitled to credit against the demands herein of Preston State Bank in the amount of $1789 in full by way of set-off and reconvention and George E. Chamberlain is entitled to recover against cross-defendant, Preston State Bank, the remaining portion of said $4677.02, to-wit, $2888.02."

Points of appeal may likewise be summarized, viz.: The trial court's error (1) in refusing to sustain exception to the entire cross-action, said pleading showing prima facie that same was barred by the Statute of Limitations; (2) in permitting third-party defendant, through cross-examination of plaintiff's witness, to vary the order of proof to the extent that his cross-action was introduced as part of plaintiff's case in chief; (3) in admitting evidence of extraneous transactions over objection, which evidence was incompetent, irrelevant to any issues and highly prejudicial to plaintiff's case; (4) in denying plaintiff's right of cross-examination as to such incompetent evidence; (5) in denying plaintiff's motion for dismissal of said cross-action, also for an instructed verdict; (6) in overruling plaintiff's objections to special issues submitted and refusal to submit plaintiff's requested issues; (7) refusal to set aside jury verdict on motion therefor in that said answers were not supported by the evidence; and (8) in denying plaintiff's motion to set aside the judgment in favor of third-party defendant, in that same did not conform to the pleadings, is-

---

ment to the Bank, providing for a down payment and stated annual installments for the policy term; default in payment of an installment and notice to the company, resulting in the latter's cancellation of the policy, the unearned premium always being sufficient to pay off any balance due the Bank. For example, the Bailey C. Johnson contract originally declared on by appellant was of date September 21, 1953 for $2,057.36, representing total premium and the carrying charge on a $42,500 fire insurance policy —five year term; down payment $596.35; balance of $1,789 and interest payable in four (4) yearly installments of $514.34 each. On default of first installment by Johnson and notice to National Union, the Company had refunded the unearned premium of $1,789 to Chamberlain who admitted in his cross-action that the Bank should have credit therefor; the jury finding the balance of overpay-

ment due Chamberlain to be $2,888.02.

The Bank assignment form of these deferred payment contracts included the following provisions: (4) "that in the event of default of this contract we shall cancel the policy or policies upon your request and shall remit to you the unearned premium" (7) "that the payment schedule is so arranged that the short term return premium shall equal or exceed the outstanding balance on this contract at all times;" (10) "that if any representations, warranties, or statements contained in this agreement are found to be untrue or incorrect, the undersigned will immediately upon demand of the holder of this contract, purchase said contract and pay for the same the full amount of the remaining unpaid balance of the indebtedness therein referred to together with accrued interest on same".

sues in the case and verdict rendered by the jury.

■ Several of the foregoing points may be disposed of briefly. (1) The record does not show that plaintiff's exception to the cross-action on ground of limitation was ever presented to the trial court for any ruling thereon. It was therefore waived and cannot be made the basis of an assignment of error. Garcia v. Yzaguirre, Tex. Com.App., 213 S.W. 236; Buchanan v. Davis, Tex.Civ.App., 300 S.W. 985; Id., Tex.Com.App., 12 S.W.2d 978. (2) Plaintiff Bank had made its Assistant Vice-President, Edward A. Wood, a witness in connection with the Bailey C. Johnson Deferred Premium Contract, establishing the balance due of $1,789, liability for which was admitted by Chamberlain; the merits of his cross-action then becoming the only matter at issue between the parties to which the cross-examination was thereafter directed. We find no prejudice resulting to plaintiff from such procedure, aside from the fact that in Texas an adversary in his cross-examination is not limited to matters covered by direct examination. Wentworth v. Crawford, 11 Tex. 127; Rhine v. Blake, 59 Tex. 240. Same may extend to any matter relevant to the issues between the parties. Grocers Supply Co. Inc. v. Stuckey, Tex.Civ.App., 152 S.W.2d 911 (Err. Ref.). (3) In aid of his cross-action charging overpayment, Chamberlain was necessarily obliged to establish the state of his indebtedness represented by his other accounts at the Bank. Such evidence therefore may not be characterized as relating to "extraneous transactions"; nor does the record sustain the charge that plaintiff was unduly restricted in any right of cross-examination with respect thereto.

■ The trial court properly denied plaintiff's motion for judgment; also for instructed verdict and dismissal of Chamberlain's cross-action. In the first place, the latter had admitted liability in amount originally sued for $1,789), and plaintiff was allowed recoupment for that amount in the judgment rendered. Secondly, plaintiff's motion made to the court at close of testimony was "to instruct a verdict dismissing the cross-action of George E. Chamberlain against the Preston State Bank upon the ground that the evidence adduced by the cross-plaintiff shows that his cause of action, if any, arose in September of 1953 and not later than 1954, and that the cross-action filed herein was not filed until April 12, 1957". Our discussion will be confined to the quoted objection though under Point 5 appellant attempts the assertion of additional grounds of error. In this connection however, Mr. Wood, Bank Official, admitted that notice was not given to cross-plaintiff of default in installment payments on the J. C. Cherry contract referred to in the jury issues; stating in effect that, due to misplaced records, the Bank had never called for cancellation of the Cherry policies until after their termination and premiums earned. No liability on the part of Chamberlain or the Insurance Company coming into existence relative to the Cherry obligation, the Bank has obviously misapplied cross-plaintiff's September 1953 payments to that account.

Also there was testimony in support of the jury finding that, following these September 1953 payments to the Bank by Chamberlain, officials of the former misinformed him concerning the balance due on his obligations; and not until May 3, 1956 did cross-plaintiff receive knowledge of the Bank's failure to give him credit for those payments. While Chamberlain admitted that in earlier conversations with Bank officials, they had indicated the alleged payments might be so applied, evidenced by letter to him of July 1954, he denied receipt of such letter or knowledge of its contents until time of taking depositions in May 1956. The testimony of Chamberlain, though con-

flicting relative to time of discovery of the true status of his credits and debits with the Bank was nevertheless a fact question, resolved by the jury in his favor.

■ Appellant's objections to the court's charge was orally made, not in compliance with the Rule 272, Texas Rules of Civil Procedure, and was as follows: "well, I object to the ten issues submitted on the grounds that the issues submitted are not within the issues as set up by the pleadings, which have failed to comply with the provisions of Rules 94 and 95 of the Rules of Civil Procedure". Such blanket objections to all issues, not in writing, was obviously violative of Rule 272, but if to be considered, was without merit. The issues were well within purview of the cross-action, and if referable to issue 9, payment of the checks was "so plainly and particularly described in the plea as to give plaintiff full notice of the character thereof." Rule 95. Similarly, appellant's "additional issues" were orally made, i. e., not "requested in writing and tendered by the party complaining of the judgment." Rule 279. Error, if any, in the court's failure to submit the issues in question has therefore been waived. Crowell-Gifford Furniture Co. v. Cloutman, Tex.Civ.App., 276 S.W.2d 539; Parr v. Herndon, Tex.Civ.App., 294 S.W.2d 162.

All points of error, upon due consideration, must be overruled and judgment of the trial court affirmed.

Affirmed.

### On Motion for Rehearing.

The nature and content of appellant's motion (Paragraphs 1 through 7) require a further discussion of its points on appeal.

First, it is charged that we have ignored clause five of the deferred premium contract, which was violated by Chamberlain, thus activating clause ten and rendering the latter liable on the J. C. Cherry contract "for the balance of indebtedness due there-on, together with accrued interest on same." Clause five reads: "That in the event any of the policies shown on this contract are cancelled for any reason we shall notify you immediately and shall remit to you any unearned premium which may develope, whether from cancellation or otherwise." Referable to above clause, Chamberlain testified without dispute that there were no cancellations of policies with liability for unearned premiums during term of the Cherry contract. Certain policies were merely replaced with no money accruing to Chamberlain; the Bank having the same security in unearned premiums on the substituted policies as before.

■ (2) Appellant's exceptions on limitation first appear as a ground of error in its motion for new trial. Not having been called to the Court's attention for a ruling on pre-trial or during process of the instant trial nor exceptions saved in the judgment, we have properly held that same cannot be made a basis for any points of appeal. Limitation was of course pled in defense of the Chamberlain counterclaim, becoming one of fact for the jury. (3) It is argued that an issue of interest remains in the case, appellant having sued for $1,789 plus $268.16 interest, or a total of $2,057.36. Since the principal amount of appellant's claim was more than off-set by the amount established by Chamberlain in his cross-action, clearly no liability arose on part of Chamberlain for any interest on the principal amount sued for by the Bank. Neither do we find that above matter was raised in motion or amended motion for new trial. (4) Appellant is highly critical of the statement made in original opinion that "Chamberlain was necessarily obliged to establish the state of his indebtedness represented by his other accounts at the Bank"; and proceeds to demonstrate an incompleteness of the record in such regard. The quoted statement may be accurate only, as generally applied to this record; but even so, appellant's position

here is entirely inconsistent with the substance of its third point on appeal to effect that none of the evidence relative to appellees' other indebtedness should have been admitted; same being irrelevant to any issue in the case. Be that as it may, it appears without contradiction that Chamberlain has paid his other indebtedness in full; the issues boiling down to whether his additional payment of $4,677.02 was due the Bank on the Cherry contract as it contends; with the jury finding to the contrary.

(5) Objection is made to our statement in opinion that "Mr. Wood, Bank Official, admitted that notice was not given to cross-plaintiff of default in installment payment on the Cherry contract * * *". We were led to make such statement by a reading of the testimony of this witness. (See SF. pp. 33, 37, 38, and 203). At any rate, an issue of fact was raised with respect thereto, the jury finding, (Issue No. 1,) that appellant Bank did not give notice to Chamberlain that the Cherry deferred payment contract was delinquent before September 1953. In this connection, on examination of the testimony of cross-plaintiff, we find no basis for the Bank's reiterated statement that "Chamberlain admitted his liability on the Cherry contract." (6) Appellant again urges the bar of limitation (two-years) since the over-payments were allegedly made in September 1953. Such defense has already been sufficiently touched upon in original opinion. (7) Appellant's objection to the Court's charge appears only in the Statement of Facts; not having been "subsequently transcribed and the court's ruling and official signature endorsed thereon and filed with the clerk in time to be included in the transcript" Rule 272, TCP. And further we differ with appellant in the statement that its requested issues were those on which appellee Chamberlain had the burden of proof.

The motion for rehearing is in all respects overruled.